# Exhibit A

For updated information about your case, including hearings, subsequent filings and other case information, please visit our Online Case Search and search for your case: https://casesearch.cookcountyclerkofcourt.org

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

JOHN ADAMS, individually and on behalf of similarly situated individuals,

*Plaintiff*,

v.

IKEA DISTRIBUTION SERVICES, INC.; IKEA NORTH AMERICA SERVICES LLC; IKEA US RETAIL LLC; IKEA PROPERTY, INC.; and IKEA SUPPLY AG,

*Defendants*.

Case No. 2026CH04723

FILED
5/15/2026 5:26 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH04723
Calendar, 12
38115450

## CLASS ACTION COMPLAINT

Plaintiff, John Adams ("Plaintiff"), individually and on behalf of others similarly situated, by and through his undersigned counsel, and for his Class Action Complaint against Defendants IKEA Distribution Services, Inc.; IKEA North America Services LLC; IKEA US Retail LLC; IKEA Property, Inc.; and IKEA Supply AG (collectively "IKEA" or "Defendants"), alleges as follows based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

## NATURE OF THE ACTION

1. This is an action for damages and any other available legal or equitable remedies, for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq., Unjust Enrichment, and Money Had and Received, resulting from Defendants' practice of charging their customers inflated prices in response to unlawfully imposed tariffs.

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

2. This lawsuit arises from Defendants' retention of windfall profits generated as a consequence of the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.* This windfall is a direct result of Defendants systematically passing on the costs of IEEPA tariffs to their own customers—including Plaintiff—through elevated product prices.

3. Beginning on February 1, 2025, President Donald J. Trump issued Executive Orders 14193, 14194, and 14195 imposing IEEPA-based duties on certain imports from Canada, Mexico, and China, respectively. He later issued Executive Order 14245 on March 24, 2025 concerning tariffs on countries importing Venezuelan oil, and Executive Order 14257 on April 2, 2025 declaring a national emergency based on large and persistent United States goods trade deficits and imposing reciprocal tariffs on a broad range of trading partners. *See* Exec. Order No. 14193 (Feb. 1, 2025); Exec. Order No. 14194 (Feb. 1, 2025); Exec. Order No. 14195 (Feb. 1, 2025); Exec. Order 14257 (Apr. 2, 2025); Exec. Order No. 14245 (Mar. 24, 2025) (collectively, the "Tariff Executive Orders").

4. The sweeping Tariff Executive Orders imposed an array of frequently changing duties ranging from 10% to 145% based on country-specific tariff policy dictated through published Executive Orders. *See* Exec. Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025); Exec. Order No. 14,259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

5. Studies by the Federal Reserve Bank of New York find that "U.S. firms and consumers continue to bear the bulk of the economic burden of the high tariffs imposed in 2025."[1]

[1] Mary Amiti, Chris Flanagan, Sebastian Heise, and David E. Weinstein, *Who is Paying for the 2025 U.S. Tariffs?*, Federal Reserve Bank of New York (Feb. 12, 2026), https://libertystreeteconomics.newyorkfed.org/2026/02/who-is-paying-for-the-2025-u-s-tariffs/.

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

Whereas the imposition of tariffs on foreign trade partners was intended to even international trade deficits, much of the cost of the applicable tariffs was passed on to American consumers who bore the brunt of tariff costs in the form of increased prices.

6. When goods are imported into the United States, the United States Customs and Border Protection ("CBP") assesses and collects tariffs on those goods based on the Harmonized Tariff Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through a process known as liquidation. *See* 19 U.S.C. § 1504(b).

7. Defendants paid IEEPA tariffs when they imported the products Plaintiff and similarly situated consumers purchased. To offset the cost of paying IEEPA tariffs, Defendants passed those costs on to Plaintiff and similarly situated consumers by inflating the prices of their products.

8. On February 20, 2026, the United States Supreme Court held that the IEEPA and other statutes cited in the Tariff Executive Orders do not authorize the President to impose tariffs. *Learning Res., Inc. v. Trump*, 607 U.S. ____ (2026).

9. As a result, any IEEPA tariffs charged to Defendants were unlawful for lack of statutory authorization, and Defendants are entitled to seek a refund for any tariffs they paid pursuant to the Tariff Executive Orders through either litigation or the liquidation process.

10. However, Defendants *have already* passed their unlawful IEEPA tariff burdens onto Plaintiff, the Class, and Subclass Members by directly charging elevated prices associated with their tariff burden. Plaintiff, the Class, and Subclass Members were thereby deprived of money paid to Defendants for unlawful IEEPA tariffs.

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

11. Defendants have not disclosed to consumers whether they intend to seek tariff refunds from the government and have made no commitment to return any portion of anticipated tariff refunds to the consumers who bore those costs through elevated prices.

12. If Defendants receive a refund for the IEEPA tariffs, Defendants will have been provided a windfall as a result of already having charged consumers for the collection of unlawful IEEPA tariffs. Defendants' retention of money obtained from charging consumers for IEEPA tariffs offends public policy, is oppressive, and causes substantial injury to consumers by depriving them of the cost of the unlawful IEEPA Tariffs.

13. The value of IEEPA tariff refund claims is not merely speculative. Even before the Supreme Court issued its decision in *Learning Resources*, a robust secondary market had emerged in which distressed investors and hedge funds have purchased IEEPA tariff refund claims from importers at a discount in exchange for immediate liquidity.[2]

14. The existence and active trading of these claims confirms that the tariff refunds Defendants are positioned to recover represent concrete, quantifiable economic value—not hypothetical future benefits—and that Defendants' anticipated double recovery at consumers' expense is both real and imminent.

15. Other corporations in Defendants' same position have enacted tariff refund programs to compensate their customers who paid higher prices for products and thus bore the burden of pass-through tariff costs.[3] Defendants could have enacted a similar payback program for Plaintiff, the Class, and Subclass Members, yet chose not to.

---

[2] Vito Emanuel, *Wall Street Is Betting on Tariff Refunds After Supreme Court Ruling*, NPR (Mar. 5, 2026), https://www.npr.org/2026/03/05/nx-s1-5736120/tariff-refunds-wall-street-trade.

[3] Jeannette Neumann, *Cards Against Humanity to Give Tariff Refunds to Buyers Who "Overpaid,"* Crain's Chicago Business (Feb. 25, 2026), https://www.chicagobusiness.com/consumer-products/cards-against-humanity-give-tariff-refunds/.

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

16. At minimum, once IEEPA tariff refunds, reliquidation, or other recovery became available, Defendants' retention of tariff-related amounts paid by consumers became unfair, oppressive, and substantially injurious because Defendants retained the benefit of both consumer pass-through payments and the corresponding refund rights or proceeds.

17. Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek redress for violations of the Illinois Consumer Fraud Act (815 ILCS 505/1 *et seq.*), as well as common law unjust enrichment and money had and received, and for such other relief as the Court may deem just and appropriate.

## PARTIES

18. At all relevant times, Plaintiff has been a citizen of the State of Illinois and resident of Cook County.

19. Defendant IKEA Distribution Services, Inc. is a Delaware corporation that is licensed to do business in Illinois and which does business in Illinois and Cook County.

20. Defendant IKEA North America Services LLC is a Virginia limited liability company that is licensed to do business in Illinois and which does business in Illinois and Cook County.

21. Defendant IKEA US Retail LLC is a Virginia limited liability company that is licensed to do business in Illinois and which does business in Illinois and Cook County.

22. Defendant IKEA Property Inc. is a Delaware corporation that is licensed to do business in Illinois and which does business in Illinois and Cook County.

23. Defendant IKEA Supply AG is a corporation organized under the laws of Switzerland that is licensed to do business in Illinois and which does business in Illinois and Cook County.

24. Collectively, Defendants do business under the "IKEA" brand name and sell consumer goods online and in-stores to customers within Illinois, including in Cook County.

**JURISDICTION**

25. The Court has personal jurisdiction over Defendants pursuant to 735 ILCS 5/2-209(a)(1) because Defendants transacted business in this State by selling consumer goods directly to consumers in Illinois, including Plaintiff. Defendants are registered to do business in Illinois and have been doing business in Illinois during all relevant times. Defendants have substantial contacts with Illinois, have purposefully availed themselves of the Illinois market, and have received substantial benefits and income from Illinois. Specifically:

a. Defendants operate and maintain the IKEA website (ikea.com), which is accessible to and targets Illinois consumers;

b. Defendants operate two major retail locations in Illinois;

c. Defendants advertise and market their products to Illinois consumers through targeted digital advertising, social media, and other promotional channels;

d. Defendants ship products to Illinois consumers, including Plaintiff, at addresses within Illinois;

e. Defendants collect Illinois sales tax on transactions with Illinois consumers, including Plaintiff's purchases;

f. Defendants have entered into continuous and systematic business relationships with Illinois consumers by accepting orders, processing payments, and fulfilling deliveries within Illinois;

g. Plaintiff's claims arise directly from Defendants' business activities directed at Illinois, including the charging of unlawful IEEPA tariffs on products purchased by Illinois residents and shipped to Illinois addresses; and

h. Upon information and belief, Defendants have derived substantial revenue from Illinois consumers and Illinois constitutes a significant market for Defendants' business operations.

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

26. Venue is proper in Cook County because Plaintiff resides in Cook County, and a substantial portion of the events giving rise to this action occurred in Cook County, including Plaintiff's purchases of tariffed goods from Defendants.

## COMMON FACTS

### Defendant's Business Model and Supply Chain

27. Defendants advertise, market, sell, and distribute consumer products throughout the United States in physical retail stores, through IKEA's website, and on IKEA's mobile application.

28. Defendants source a substantial majority of the products they sell from manufacturers and producers located in China, Germany, Italy, Lithuania, Poland and elsewhere abroad. Upon information and belief, Defendants or their affiliated entities serve as the importer of record for IKEA products and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports.

29. Upon information and belief, the products Plaintiff purchased throughout the Class Period were imported from abroad either during or after the IEEPA tariff period and were subject to IEEPA tariffs when imported.

### Defendants' Pass-Through of IEEPA Tariffs to Consumers

30. For purposes of this Complaint, the "Class Period" is defined as February 4, 2025 through February 24, 2026—the period during which IEEPA tariffs were in effect and enforced by U.S. Customs and Border Protection.

31. During the Class Period, Defendants charged retail prices inflated by the cost of IEEPA duties by raising prices on IKEA's consumer products. In an interview, an IKEA

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

executive—in response to questions about mounting tariffs—admitted Defendants would "have to adapt and pass on parts of the cost increase to the customers."[4]

32. Throughout the Class Period, Defendants passed the cost of IEEPA tariffs onto consumers, including Plaintiff and Members of the Class and Illinois Subclass, by inflating the prices of goods they sold.

33. Throughout the Class Period, Plaintiff purchased furniture, home décor items, and kitchen appliances from Defendants. For those transactions, Defendants charged prices that included amounts attributable to IEEPA duties to Plaintiff by embedding those costs in the prices Plaintiff paid.

## PLAINTIFF'S IKEA TRANSACTIONS

34. Within the Class Period, Plaintiff purchased his items directly from IKEA at its Bolingbrook and Schaumburg, IL retail locations, and through IKEA's website.

35. Plaintiff made purchases from Defendants on May 18, 2025; May 24, 2025, June 1, 2025; June 4, 2025; June 5, 2025; June 23, 2025; June 27, 2025; July 9, 2025; August 2, 2025; September 24, 2025; September 26, 2025; September 29, 2025; October 19, 2025; October 25, 2025; and December 6, 2025. All such purchases were during the period unlawful tariffs were in effect.

36. On information and belief, several such items were imported from countries subject to IEEPA tariffs and were imported by or for Defendants during the period in which those tariffs were in effect. The product-level import origin, importer-of-record information, tariff

[4] Chelsey Dulaney, *IKEA's Yearslong Price-Cutting Bonanza Is Coming to an End*, The Wall Street Journal (Oct. 16, 2025), https://www.wsj.com/business/retail/ikeas-low-price-mantra-is-tested-by-trumps-tariffs-4455986a.

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

classification, entry data, duty-payment records, and any records reflecting whether IEEPA tariff costs were incorporated into retail pricing are within Defendants' possession, custody, or control.

37. Defendants paid IEEPA tariffs on such items that Plaintiff purchased and embedded the cost of those tariffs in the prices charged to Plaintiff. But for IKEA's pass-through of IEEPA tariff costs, Plaintiff would have paid lower prices for the products he purchased.

38. Defendants' retention of the unlawful IEEPA Tariff costs that were passed on to Plaintiff, the Class, and Subclass Members offends public policy as it is unconscionable and unfair for Plaintiff and similarly situated consumers to shoulder Defendants' tax burden under the IEEPA Tariffs when those Tariffs were unlawful and should not have been collected.

39. As a result of Defendants' practice of passing on Tariff costs to their customers, Plaintiff, the Class, and Subclass Members were forced to pay Defendants' tax burdens because Defendants passed the unlawful IEEPA Tariffs on to them.

40. Plaintiff and the members of the Class and Subclass have unequal bargaining power to Defendants and are unable to negotiate the payment of the unlawful IEEPA Tariffs from Defendants, and therefore Plaintiff, the Class, and Subclass members could not avoid paying the unlawful IEEPA Tariffs.

41. Allowing Defendants to keep the proceeds of the unlawful IEEPA Tariff charges deprives Plaintiff and Members of the Class and Subclass of the money paid for the cost of the unlawful IEEPA Tariffs while providing nothing of value to Plaintiff or the Class's Members.

42. But for Defendants charging Plaintiff, and the Members of the Class and Subclass the cost of the unlawful IEEPA Tariffs, Plaintiff and the Members of the Class and Subclass would not have needed to shoulder the cost of the unlawful IEEPA Tariffs.

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

## DEFENDANTS' ANTICIPATED TARIFF REFUNDS AND RESULTING DOUBLE RECOVERY

43. On March 4, 2026, the United States Court of International Trade issued a significant order in *Atmus Filtration, Inc. v. United States*, directing U.S. Customs and Border Protection to refund duties imposed under the IEEPA. *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026).

44. The Court of International Trade later reinforced that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Supreme Court's decision in *Learning Resources. Atmus Filtration*, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026). The Court ordered CBP to liquidate all unliquidated entries "without regard to IEEPA duties" and to reliquidate any liquidated entries for which liquidation is not final without regard to those duties. *Id.* at *2-3.

45. According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at ¶ 12.

46. Accordingly, Defendants are entitled to substantial refunds for IEEPA tariffs they paid as the importer of record for goods sourced from China and other countries subject to IEEPA tariffs.

47. To date, Defendants have not established any mechanism to refund to consumers the tariff costs Defendants passed through to them via elevated prices and import charges during the Class Period.

48. This presents an obvious problem: Although Defendants will recover or are positioned to recover tariff refunds on the tariffed goods they sold, Defendants' customers have

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

already borne the economic brunt of these tariffs by paying higher prices set by Defendants. The risk of Defendants obtaining double recovery is therefore imminent.

49. Defendants are poised to be paid twice for the same unlawful tariff burden: once by their customers (including Plaintiff) through elevated prices and import charges, and once by the U.S. government through tariff refunds.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings his claims individually and on behalf of the following Class and Subclass pursuant to 735 ILCS 5/2-801:

> **Class:** All persons in the United States who, during the Class Period, purchased IKEA products imported into the United States by or for Defendants from countries subject to IEEPA duties and for which Defendants paid, deposited, or accrued IEEPA duties that were reflected in retail pricing.
>
> **Illinois Subclass:** All members of the Class whose purchases were made within Illinois.

51. Excluded from the Class are: (1) Defendants; (2) Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their family; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendants' counsel, and their experts and consultants.

52. **Numerosity**. The proposed class contains members so numerous that separate joinder of each member of the class is impracticable. Upon information and belief, there are at least hundreds of thousands, if not millions, of proposed class members. The individuals who purchased items subject to IEEPA Tariffs can be ascertained through records in the possession, custody, or control of Defendants.

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

53. **Commonality and Predominance**. There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

a. Whether Defendants paid IEEPA tariffs on products sold to consumers during the Class Period;

b. Whether Defendants passed IEEPA tariff costs onto consumers through elevated prices;

c. Whether Defendants' retention of the unlawful IEEPA Tariffs paid by Plaintiff, the Class, and Subclass Members is unjust, oppressive, unscrupulous, or unfair;

d. Whether Defendants misled consumers regarding pricing and tariff pass-through;

e. Whether Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act through their misrepresentations and omissions regarding pricing and tariff pass-through;

f. Whether Defendants unjustly enriched themselves as a result of the unlawful conduct alleged above;

g. Whether Defendants have been or will be unjustly enriched by receiving government refunds for tariffs they passed through to consumers;

h. Whether the Class and Subclass members are entitled to restitution, actual damages, and attorneys' fees and costs.

54. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff understands the obligations inherent in representing a putative class, and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex and class action litigation. Plaintiff has no interests antagonistic to the Class's interests, and Defendants have no defenses unique to Plaintiff.

55. **Appropriateness:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all members of the Class and Subclass is impracticable. The damages suffered by the individual members of the Class and Subclass are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class and Subclass to obtain effective relief from Defendants' misconduct. Even if members of the Class and Subclass could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1 *et seq.***
**(on behalf of Plaintiff and the Illinois Subclass)**

56. Plaintiff incorporates the foregoing allegations in Paragraphs 1–55 as if fully stated herein.

57. Plaintiff, Members of the Illinois Subclass, and Defendants are "persons" within the meaning of 815 ILCS 505/1(c).

58. At all times mentioned herein, Defendants engaged in "trade" or "commerce" in Illinois as defined by 815 ILCS 505/1(f), by engaging in the offering and sale of things of value in Illinois.

59. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") provides that ". . . [u]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

practice described in . . . the 'Uniform Deceptive Trade Practices Act' . . . in the conduct of any trade or commerce are . . . unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

60. Plaintiff and Illinois Subclass Members purchased consumer goods marketed and sold by Defendants.

61. Defendants' conduct was unfair under ICFA. In addition, Defendants' public statements connecting price increases to tariffs, trade-rule changes, and increased import costs were deceptive or misleading to the extent Defendants retained or intended to retain any refund, credit, reliquidation, or other recovery of the same tariff costs without returning or crediting the corresponding amounts to consumers.

62. After the Supreme Court held that the IEEPA tariffs lacked statutory authorization, Defendants became entitled or positioned to seek refunds, reliquidation, or other recovery of the IEEPA duties they had paid or deposited on imported IKEA products. Defendants nevertheless have not established any mechanism to return to consumers the tariff-related amounts Defendants passed through in the prices consumers paid.

63. Defendants' conduct is unfair because Defendants shifted the economic burden of the IEEPA tariffs to consumers, while retaining for themselves the refund rights, credits, reliquidation, or proceeds corresponding to the same tariff costs. Plaintiff does not allege that Defendants were required to predict the Supreme Court's ruling when the tariffs were first imposed; rather, the unfairness arises from Defendants' continued retention of tariff-related amounts after those tariff costs became refundable or recoverable.

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

64. Defendants' conduct offends public policy because it permits the party that passed a government charge through to consumers to retain the benefit of a later refund of that same charge, while the consumers who bore the economic burden receive nothing.

65. Defendants' conduct is oppressive and unscrupulous because Plaintiff and Illinois Subclass Members had no practical ability to identify, segregate, negotiate, or later recover the tariff-related component embedded in IKEA's retail prices, and consumers have no direct mechanism to obtain IEEPA tariff refunds from the government.

66. Defendants' conduct caused substantial injury to consumers because Plaintiff and Illinois Subclass Members paid retail prices inflated by tariff-related costs, and Defendants' failure to return or credit those amounts deprives consumers of money corresponding to tariff costs that Defendants may recover or have recovered from the government.

67. 815 ILCS 505/10a states: "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper . . . (c) [t]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party."

68. In taking the actions set forth above, Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2, by engaging in deceptive and unfair practices in connection with the sale of consumer products to Plaintiff and Illinois Subclass members.

69. As a proximate result of Defendants' violations of the ICFA, Plaintiff and the Illinois Subclass members suffered actual economic damages, including the tariff-related portion

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

of the retail prices they paid for IKEA products and/or the amount of any tariff refund, credit, reliquidation, or other recovery Defendants received or are entitled to receive for tariff costs that Defendants passed through to consumers.

70. There is no benefit to consumers from Defendants' conduct. The only parties who benefit are Defendants, who enjoy increased profits as a result of their conduct.

71. For the reasons discussed herein, Defendants have violated ICFA by engaging in the deceptive or unfair acts or practices prohibited by 815 ILCS 505/2 and 510/2.

72. Plaintiff and the Illinois Subclass Members are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under the law.

**COUNT II**
**Unjust Enrichment**
**(on behalf of Plaintiff and the Class and Illinois Subclass)**

73. Plaintiff incorporates the foregoing allegations in Paragraphs 1–72 as if fully stated herein.

74. Plaintiff and the members of the Class and Subclass conferred monetary benefits to Defendants by paying elevated prices for products that included unlawful IEEPA Tariff costs.

75. Defendants have been unjustly enriched because they collected and retained retail payments from Plaintiff and the Class that included amounts attributable to IEEPA tariff costs, while also retaining the right to seek or receive refunds, credits, reliquidation, or other recovery of those same tariff costs from the government.

76. Defendants knew and appreciated the benefit they received because they set, charged, and retained retail prices that included tariff-related cost increases paid by Plaintiff and the Class. At minimum, after the Supreme Court's invalidation of the IEEPA tariffs and subsequent

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

refund-related proceedings, Defendants knew or should have known that any refund or recovery of IEEPA duties would correspond to tariff costs that consumers had already economically borne through Defendants' prices.

77. Defendants' retention of these benefits is unjust and inequitable now that Defendants are positioned to retain both the tariff-related amounts collected from consumers and the corresponding refund rights or proceeds from the government.

78. The IEEPA Tariffs were later determined to lack statutory authorization, making the tariff payments refundable or recoverable by importers such as Defendants.

79. There is no adequate remedy at law for Plaintiff and the Members of the Class and Subclass, as Defendants have established no mechanism to refund tariff costs to consumers, and consumers have no direct statutory cause of action to recover IEEPA tariffs from the government.

80. Under principles of equity and good conscience, it would be unjust to permit Defendants to retain both (a) the elevated prices consumers paid due to tariff pass-through pricing, and (b) government refunds of those same tariff costs.

81. Plaintiff and the other members of the Class and Subclass are entitled to restitution in the amount by which Defendants have been unjustly enriched to Plaintiff and the members of the Class's and Subclass's detriment, and an order requiring Defendants to disgorge any additional profits or other benefit they have retained as a result of their unjust and unlawful conduct.

**COUNT III**
**Money Had and Received**
**(on behalf of Plaintiff and the Class and Illinois Subclass)**

82. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1–81 above as if fully stated herein.

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

83. This Count is pleaded in the alternative to Count II. While Count II (Unjust Enrichment) addresses the inequity of Defendants' retention of consumer overcharges already collected, this Count more particularly addresses Defendants' anticipated receipt and retention of government refund proceeds that, in equity, represent a return of costs that were economically borne by Members of the Class and Subclass, not by Defendants.

84. Defendants received money from Plaintiff and from each Member of the proposed Class and Subclass in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

85. Defendants received this money for the purpose of repaying themselves the IEEPA tariffs they had advanced, as the importer of record, to U.S. Customs and Border Protection as duties on imported goods.

86. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization. *Learning Resources*, Slip Op. at 20.

87. Defendants are now positioned to recover refunds of the IEEPA tariffs from the U.S. government through the liquidation process or litigation in the Court of International Trade. Upon information and belief, Defendants have not paid or distributed any portion of these anticipated refunds to Plaintiff or other consumers who bore the economic burden of the tariffs through elevated prices.

88. The money that Defendants will recover from the government as IEEPA tariff refunds represents, in equity, a return of money that belonged to Plaintiff and to each Member of the proposed Class and Subclass—the consumers who paid elevated prices due to Defendants' tariff pass-through.

89. Defendants have not returned this money to Plaintiff or the Class and Subclass.

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

90. In equity and good conscience, Defendants should not be permitted to retain the funds they are owed by the government as IEEPA tariff refunds. Those funds belong, in equity, to Plaintiff and the Class and Subclass, and Defendants are obligated to return them.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief as pled in the foregoing and judgment against Defendants as follows:

a. An Order certifying the Class and Subclass, defining the Class and Subclass as requested herein, appointing Plaintiff as Class representative, and appointing his counsel as Class counsel;

b. An award of any actual, compensatory, and enhanced damages permitted to Plaintiff and other Class and Subclass Members, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c. An award of reasonable attorneys' fees, costs, and other litigation expenses;

d. An award of pre- and post-judgment interest as available under law;

e. The disgorgement of any funds in the amount Defendants were unjustly enriched by their conduct; and

f. Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: May 15, 2026

Respectfully submitted,

JOHN ADAMS, on behalf of himself and others similarly situated

By: /s/ Joseph M. Dunklin

Myles McGuire
Evan M. Meyers

FILED DATE: 5/15/2026 5:26 PM 2026CH04723

Joseph M. Dunklin
McGuire Law, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
jdunklin@mcgpc.com

*Counsel for Plaintiff and the putative Class and Subclass*