**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN ADAMS, individually and on behalf of similarly situated individuals,<br><br>*Plaintiff,*<br><br>v.<br><br>IKEA DISTRIBUTION SERVICES, INC.; IKEA NORTH AMERICA SERVICES LLC; IKEA US RETAIL LLC; IKEA PROPERTY, INC.; and IKEA SUPPLY AG,<br><br>*Defendants.* | ) | Case No. 1:26-cv-07154<br><br>Hon. Edmond E. Chang |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND OR, IN THE ALTERNATIVE, FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

## I. INTRODUCTION

Defendants' Opposition confirms what their Notice of Removal already showed: Defendants cannot say what this case is worth, so they ask the Court to assume it. Their brief offers four different routes to $5 million: other plaintiffs' complaints in other cases; an aggregate tariff figure multiplied by a newspaper's estimate of industry-wide pass-through; a percentage of IKEA's gross sales; and a single sofa's price increase extrapolated across a hypothetical class of 100,001 members. None of these rests on evidence of what IKEA actually charged the Class. Each depends instead on a percentage, fraction, or average that appears nowhere in the Complaint and nowhere in Defendants' own declaration.

That is not the showing CAFA requires. Once Plaintiff contested the amount in controversy, Defendants had to prove those jurisdictional facts by a preponderance of the evidence, and to establish not only what the stakes of the litigation could be, but also what they are given the

plaintiff's actual demands. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). What Defendants offer instead is a set of stacked assumptions of the amount charged to the Class: half the tariff, a quarter of it, a tenth of it. That alternative pleading shows only that Defendants themselves cannot identify the stakes of this litigation.

Because Defendants have not carried their burden, this Court lacks subject-matter jurisdiction and must remand. Alternatively, and before any denial of remand, Plaintiff respectfully requests leave to take the narrow jurisdictional discovery identified in his Motion, directed solely at the amount in controversy that Defendants' own submissions leave unresolved.

## II. ARGUMENT

### A. Defendant Fails to Show that the Amount in Controversy Exceeds $5 Million as Required

Defendant incorrectly contends that this litigation should proceed in a federal forum under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). For the Court to have jurisdiction under CAFA, three requirements must be met: "(1) the proposed class has 100 or more members; (2) at least one class member is diverse from at least one defendant ("minimal diversity"); and (3) more than $5 million exclusive of interests and costs is in controversy in the aggregate." *Schutte v. Ciox Health, LLC*, 574 F. Supp. 3d 618, 621 (E.D. Wis. 2021), *aff'd,* 28 F.4th 850 (7th Cir. 2022). Defendants have failed to present the required showing that the amount in controversy in this case exceeds $5 million. In order to meet their required burden defendants "…must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). Defendants have not done so.

**1. Defendants Cannot Establish the Amount in Controversy by Pointing to Two Other Cases**

First, Defendants argue that because two other putative nationwide class actions with similar allegations have been filed in federal court and concede to the amount in controversy exceeding $5 million, the present action should have the same result. (Def.'s Opp. to Mot. to Remand at 10-11). This is incorrect, and Defendants' reliance on *Terrill* and *Matthews* fails as a result. *Terrill v. IKEA North America Services LLC et al*, No. 26-2774 (E.D. Pa.) (filed Apr. 27, 2026); *Matthews v. IKEA North America Services LLC et al*, No. 26-3712 (E.D. Pa.) (filed May 29, 2026). The fact that other plaintiffs, in other lawsuits, have conceded to an amount in controversy exceeding $5 million does not establish that this action does so. Separate plaintiffs conceding to an amount in controversy is not evidence of the amount in controversy here, particularly where the other actions involve different plaintiffs, different purchases, and separate classes. *Terrill* and *Matthews* may demonstrate that other plaintiffs have made similar allegations, but they do not establish the amount in controversy in this action. *See Brewer v. State Farm Mut. Auto. Ins. Co.*, 101 F. Supp. 2d 737, 741 (S.D. Ind. 2000) (finding that a showing of "ceiling amounts recovered in the past for claims generally similar" are insufficient to establish amount in controversy). *See also Golin v. Neptune Mgmt. Corp.,* 704 F. App'x 591, 595 (7th Cir. 2017) (finding amount in controversy cannot be determined based on potential recovery in a separate action against different defendants).

Defendants cite *Blomberg v. Service Corp. International*, for the proposition that a comparable CAFA class action in federal court with "similar allegations" and an "identical proposed class definition" provided "useful" evidence as to the amount in controversy. 639 F.3d at 764. But *Blomberg* is distinguishable in that the Defendant in that case supported its amount in controversy calculation "with pleadings from other related lawsuits, counsel's affidavit, and a list

of [Defendant's] 538 Illinois employees." *Id.* at 763. Here, although Defendants have submitted a supplemental affidavit and estimates based on the allegations in the Complaint, they have not provided comparable evidence from which the Court could determine the amount in controversy by a preponderance of the evidence. In particular, Defendants have not identified any concrete information similar to how the Defendant in *Blomberg* provided a list of 538 Illinois employees, that would allow the Court to meaningfully assess the amount in controversy. Unlike the defendant in *Blomberg*, Defendants here rely primarily on estimates based on their own tariff duties, and not the amount consumers allegedly overpaid. Defendants cannot satisfy their burden of establishing that the amount in controversy exceeds $5 million by simply pointing to separate actions.

**2. Defendants Understate Their Burden to Establish the Amount in Controversy**

Defendants contend that a "good-faith estimate is acceptable if it is plausible and adequately supported by the evidence" (Opp. at 5-6, citing *Blomberg*, 639 F.3d 761, 763 (7th Cir. 2011)). However, Defendants understate their burden because "…part of the removing party's burden is to show not only what the stakes of the litigation *could be,* but also what they *are* given the plaintiff's actual demands." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). Defendants have not met that burden for several reasons. First, Defendants' $10 million in tariff payments cannot equate to the alleged amounts consumers overpaid. Second, Defendants' sales-based calculations are built on unsupported assumptions. And third, Defendants' remaining evidence does not cure these deficiencies.

**i. Defendants' $10 Million in Tariff Payments Do Not Equate to Alleged Consumer Pass-Through Amounts**

Defendants argue that the amount in controversy requirement is satisfied because IKEA paid $10 million in tariff duties during the class period. Opp. at 5-7. Defendants attach a Declaration which simply states "with respect to imports of IKEA goods from the specifically

named countries, more than $10 million in tariff duties were imposed and paid to the U.S. federal government under IEEPA between February 2025 and February 2026." (Declaration of Gustavo Antonio Tinajero at 2). Additionally, Defendants argue that through a combination of the $10 million in tariff duties they were assessed, and Plaintiff's citation of a *Wall Street Journal* article reporting that consumers allegedly covered 55 percent of those costs, the amount in controversy exceeds $5 million. But Defendant fails to mention that the 55 percent estimate appears nowhere in Plaintiff's complaint, and thus cannot be used to support a speculative amount in controversy based on that amount. *Brill*, 427 F.3d at 449 (finding that Defendants' must show what the "stakes of the litigation are… based on the plaintiff's actual demands.").

Here, despite exclusively possessing the firsthand knowledge of exactly how much of the tairffs at issue were passed through to the Class, Defendants instead assume that 55 percent of the $10 million paid in tariffs were passed through, based on a newspaper article. Opp. at 2. Even after accepting that the article is the best evidence for such a claim for the sake of argument, the amount Defendants paid in tariffs is not the same as the amount the Class allegedly overpaid. Additionally, the Complaint specifically quotes an IKEA executive's admission that Defendants would "have to adapt and pass on *parts* of the cost increase to the customers." (Compl., at ¶ 31)." Defendants present no meaningful calculations on the amount that consumers actually overpaid and instead use figures acquired from outside sources to attempt to inflate the amount in controversy. An invocation of CAFA cannot establish jurisdiction where an inference on the amount in controversy would be speculative without specific factual allegations or assertions. *See Ware v. Best Buy Stores, L.P.,* 6 F.4th 726, 733 (7th Cir. 2021); *see also Corn v. Home Depot, Inc.*, No. 22-CV-4627, 2023 WL 12153201, at *3 (N.D. Ill. Jan. 25, 2023) (finding that a defendant's affidavit estimating $10 million in sales did not establish the amount in controversy where it failed to

provide evidence tying that figure to the claim actually alleged). Therefore, Defendants' assertion that IKEA's tariff duties equate to the alleged overpayment by consumers is merely a speculative assumption and cannot satisfy Defendants' burden to establish an amount in controversy exceeding $5 million.

**ii. Defendants' Sales Based Calculations Are Built on Unsupported Assumptions**

Next, Defendants assert that because the Notice of Removal states that IKEA had nearly $5 billion in sales, and that 85% of IKEA's goods are imported from outside of North America, only 0.12% of those sales need to include pass through tariff costs to exceed $5 million as required to satisfy the amount in controversy. (Opp. at 1). While Defendants do not need to prove with legal certainty that the amount in controversy requirement has been met, they must satisfy the preponderance of evidence standard before the district court. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014). However, Defendants never provide *any* evidence of the allegedly inflated retail prices that form the basis of Plaintiff's claims. Instead, they rely on an unsupported assumption about the percentage of sales attributable to the alleged harm. The Complaint's allegation that IKEA passed tariff costs to alleged class members does not establish the amount of any alleged overcharge. *See Halim v. Charlotte Tilbury Beauty Inc.*, No. 23 CV 94, 2023 WL 3388898, at *4 (N.D. Ill. May 11, 2023) (explaining that speculation is not enough to establish amount in controversy). *See also Atteberry v. Esurance Ins. Servs., Inc.*, 473 F. Supp. 2d 876, 878 (N.D. Ill. 2007) (finding amount in controversy cannot be established on mistaken assumptions). Therefore, Defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds $5 million for several reasons.

*First*, every one of Defendants' tiered figures rests on the same two unproven inputs: (1) that the 10 percent baseline IEEPA rate – as opposed to any lower or product-specific rate – is the applicable tariff on IKEA's imported consumer goods, and (2) that some fraction of that tariff was actually passed through to retail prices, as opposed to being absorbed by IKEA as the Complaint's own citation to the Wall Street Journal article suggests is only partially true (with Goldman Sachs estimating 55 percent consumer pass-through, not 100 percent, and with "the rest falling on U.S. companies"). Multiplying an assumed tariff rate by a further assumed pass-through fraction does not convert two unverified numbers into a "plausible good-faith estimate... adequately supported by the evidence." *Schutte*, 28 F.4th at 854. If anything, stacking one unverified assumption on another compounds speculation rather than curing it. *See Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 733 (7th Cir. 2021) (jurisdiction cannot rest on an inference that would itself be speculative absent specific factual allegations or assertions).

*Second*, Defendants never identify a single data point – no transaction count, pricing data, or percentage of actual retail price changes attributable to tariffs – comparable to what the Seventh Circuit found sufficient in *Schutte*, where the defendant tied its estimate to approximately 727,000 actual transactions and a concrete $6.88 average charge that could be measured against the plaintiff's own $61 claim. *Schutte*, 28 F.4th at 855. Here, by contrast, every number in Defendants' cascading calculation (the 85 percent import assumption, the 10 percent baseline rate, and the fractional pass-through discounts) is a hypothetical applied to aggregate gross sales data, not evidence of what IKEA actually charged class members. This is the same defect that doomed the defendant's showing in *Corn v. Home Depot, Inc.*, where an affidavit estimating aggregate sales failed to establish the amount in controversy because it did not tie that figure to the claims actually alleged. No. 22-CV-4627, 2023 WL 12153201, at *3 (N.D. Ill. Jan. 25, 2023)

*Third*, Defendants' reliance on *Raskas v. Johnson & Johnson* and *Scott v. Cricket Communications LLC* for the proposition that "overinclusive" evidence is permissible is misplaced. Opp. at 13, citing *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) and *Scott v. Cricket Communications LLC*, 865 F.3d 189, 196 (4th Cir. 2017). Overinclusive evidence can be acceptable when it is anchored to at least one verifiable, record-based figure (as in *Schutte*'s transaction count or *Spivey*'s $7 million in actual credit card charges), but Defendants' tiered percentages are categorically different: they are not overinclusive estimates drawn from real data that merely sweep in some non-recoverable amounts, but rather multiple layers of unverified assumptions stacked one on top of another with no record evidence establishing any single input. In other words, "overinclusive but anchored to real data" is not the same as "built entirely on hypothetical percentages with no evidentiary anchor," as Defendants have done here.

*Fourth*, even Defendants' own briefing concedes uncertainty by offering three separate, mutually inconsistent fallback scenarios (half, quarter, and tenth of the tariff) rather than a single supported estimate. In itself, this indicates that Defendants cannot identify, by a preponderance of the evidence, what the actual amount in controversy is, only a range of what it might be depending on which unverified assumption the Court adopts. *See Atteberry v. Esurance Ins. Servs., Inc.*, 473 F. Supp. 2d 876, 878 (N.D. Ill. 2007) (amount in controversy cannot rest on mistaken or unsupported assumptions). Because Defendants' own submissions demonstrate that the amount in controversy depends entirely on which of several unverified assumptions the Court chooses to accept, Defendants have not carried their burden to show by a preponderance of the evidence that the $5 million threshold is satisfied, and the Motion to Remand should be granted.

*Fifth*, a court confronting nearly identical circumstances recently reached the same conclusion. In *Scoggan v. Costco Wholesale Corp.*, the defendant sought to establish CAFA's

amount in controversy by assuming that a fixed overcharge applied across every online transaction – an assumption that, like Defendants' 10 percent baseline rate and fractional pass-through figures here, was "an allegation made nowhere in the underlying complaint." No. 2:25-cv-08965-SVW-RAO, 2025 WL 3238184, at *2 (C.D. Cal. Nov. 19, 2025). The court granted remand, holding that a removing defendant's chain-of-reasoning assumptions "must be 'founded on the allegations of the complaint,'" and cannot rest on "mere speculation and conjecture" or "unreasonable assumptions," and rejecting the defendant's calculation because "[t]he assumption, without any supporting evidence, that a violation occurred in every large, online order is therefore speculative and unreasonable." *Id*, *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019). As in *Scoggan*, Defendants' reliance on assumed percentages untethered to the Complaint's allegations or to any record evidence cannot satisfy their burden of showing, by a preponderance of the evidence, that more than $5 million is in controversy.

**iii. Defendants' Remaining Evidence Does Not Cure These Deficiencies**

Defendants' remaining calculations extrapolate a single, isolated price increase across the entire putative class without any evidence that the increase was representative. *Cf. Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011) (finding the amount-in-controversy estimate sufficient where the defendant anchored its calculation to a list of 538 identified employees and comparable litigation with an identical class definition). Unlike the defendant in *Blomberg*, Defendants here identify no comparable concrete figure from which the Court could assess whether $50 is a representative overcharge. For example, Defendants contend that "only 100,001 class members would need to recover an average of $50 in damages to surpass the $5 million threshold." (Def.'s Opp to Mot. To Remand at 7). However, the $50 sofa price increase cited by Defendants is a single example and does not establish a $50 overcharge for each class member. *Id.*

Again, Defendant is attempting to conjure an amount in controversy without any specific explanation of the alleged overpayment figures that would establish that amount. The alleged "hundreds of thousands" of class members does not establish that each member suffered a particular amount of damages.

Defendants' reliance on *Schutte* is equally misplaced. There, the defendant supported its estimate with a declaration identifying approximately 727,000 transactions falling within the relevant class definition, allowing the court to compare the resulting $6.88 per-transaction figure to the plaintiff's own allegation that she was charged $61. *Schutte v. Ciox Health, LLC*, 28 F.4th 853, 856 (7th Cir. 2022). Here, by contrast, Defendants have provided no comparable evidence establishing either that the putative class contains 100,001 members or that each member plausibly incurred an average of $50 in overcharges. Finally, Defendants have affirmatively disclaimed Article III standing, having stated that "no member of the putative class was injured or entitled to any of the individual or class relief sought." (Opp. at 2.) To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). By Defendants' own account, Plaintiff has suffered no injury. If that is so, Article III standing is lacking, and remand is the required result. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) (holding that § 1447(c) requires remand where Article III requirements are not satisfied). For this reason alone, the Court may grant Plaintiff's Motion to Remand.

**B. Jurisdictional Discovery Should Be Granted**

Should the Court find that remand is inappropriate based on the present record, then it should allow limited discovery so that the facts necessary to determine the amount in controversy

can be uncovered. Defendants' reliance on an entirely unspecified amount of total amount of tariff duties paid does not eliminate that need. When the amount in controversy is in dispute, discovery may be taken with regard to whether the jurisdictional threshold has been met. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Here, the amount in controversy is in dispute and Defendants have not provided a good faith, reliable estimate of the amount in controversy. At most, Defendants' evidence raises further questions about the amount in controversy by equating IKEA's tariff duties to what consumers allegedly overpaid. *See Dancel v. Groupon, Inc.*, 940 F.3d 381, 386 (7th Cir. 2019) (permitting discovery to the extent the court deems necessary to determine jurisdictional requirements). *See also LaSusa v. Lake Michigan Trans-Lake Shortcut, Inc.,* 113 F. Supp. 2d 1306, 1310 (E.D. Wis. 2000) (allowing limited discovery to determine whether the amount in controversy was satisfied). Therefore, leave for jurisdictional discovery should be granted to determine the amount in controversy in this action.

Further, Plaintiff's discovery requests are limited to records necessary to evaluate the amount in controversy. Plaintiff clearly explains the discovery he would take, "(i) the SKUs (Stock Keeping Unit) of products at issue and their country of origin and import dates; (ii) IEEPA duty and payment records for those imports; (iii) qualifying sales during the proposed Class Period; (iv) any tariff-related retail price changes or pass-through data; (v) refund or reliquidation amounts Defendants received or claimed; and (vi) data concerning Plaintiff's own fifteen purchases and the individual overcharge, if any, attributable to IEEPA duties." (Mot. at 10). Defendants contend that Plaintiff has demanded information about "all products at issue" (Opp. at 15). But Defendants alone hold the key to preventing such discovery: their assertion of the actual amount in controversy. Defendants have failed to provide that figure, so Plaintiff has offered to limit his discovery requests to information necessary to obtain it. (Mot. at 10).

Defendants cite to *N. Texas Equal Access Fund v. Thomas More Soc'y* for the proposition that jurisdictional discovery is unnecessary, but that case is distinguishable because in *N. Texas*, the court found that "[t]he record is not ambiguous or unclear on the jurisdictional issues." *N. Texas Equal Access Fund v. Thomas More Soc'y*, 728 F. Supp. 3d 887, 901 (N.D. Ill. 2024). Here, in contrast, the amount in controversy is in dispute and is unclear from the evidence presented. *See Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009) (stating that "generally, courts grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue"). *See also Descamps v. Chicago Hous. Auth.*, No. 1:24-CV-04918, 2025 WL 1222581, at *4 (N.D. Ill. Apr. 28, 2025) (finding "[s]uch discovery is proper "[w]here the evidence offered by the parties is inconclusive as to subject-matter jurisdiction.). *See also Dancel v. Groupon, Inc.*, 940 F.3d 381, 386 (7th Cir. 2019) (permitting jurisdictional discovery to ensure subject matter jurisdiction has been met.). Therefore, because Defendants' evidence does not establish the amount in controversy by a preponderance of the evidence and leaves critical factual questions unresolved, limited jurisdictional discovery should be permitted to determine whether the $5 million threshold is satisfied.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (i) granting his Motion to Remand; (ii) remanding this matter to the Circuit Court of Cook County, Illinois, or in the alternative, granting leave to take jurisdictional discovery related to CAFA jurisdiction; and (iii) granting such further and additional relief as this Court deems reasonable and just.

Dated: August 25, 2026

Respectfully submitted:

JOHN ADAMS, individually and on behalf of similarly situated individuals.

By: /s/ Joseph Dunklin
One of Plaintiff's Attorneys

Myles McGuire
Evan M. Meyers
Joseph Dunklin
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl. Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
jdunklin@mcgpc.com

*Attorneys for Plaintiff and the putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 25, 2026, I caused the foregoing *Plaintiff's Reply in Support of Motion to Remand or, in the Alternative, for Leave to Conduct Jurisdictional Discovery*, to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ Joseph Dunklin